Madam Clerk, please call the first case of the morning. 5-15-03-1-7. Counsel, you may approach and proceed. May it please the court, I'm Pete Drummond, I represent the petitioner. This claim is tried and denied by the arbitrator and the commission. The petitioner here raises two primary arguments. The first argument has to do basically as a manifest weight argument concerning the arbitrator's decision that the petitioner failed to prove an accident arising out of and in the course of her employment. As the court is aware, she worked in a nursing home. Allegations are she had a combative patient, she went and reported to her nursing supervisor that she had some pain in her hands and subsequently developed more symptomology, ultimately having an MRI done, showing a couple herniated discs in her neck and having surgery. The respondent had an IME performed by Dr. Soriano. And the testimony of Dr. Soriano provided medical testimony in the claim. The fact is that there was a lot of disputes as to exactly what happened at the time of the injury. And the second issue, which is also important, is the fact that when I sent a subpoena to the nursing home asking for their accident reports and records, I first was met with resistance. Then they said, okay, we'll supply. And they did give me some records, but none of the ones that I'd asked for. I specifically asked for accident reports or anything like that. Getting back to the first issue, it was clear that the commission was troubled by the lack of cooperation in the claimant's medical records regarding a work-related injury. For example, when she went to the hospital on September 22nd, the medical records do not indicate or they indicate she sought treatment for an injury to a finger on her right hand and not for shoulder or arm injuries. She went in October and in December. The visits do not reference any work injury to any neck, back, or shoulder. According to the record, the first reference to a work-related injury in the medical records was about six months later. So what's your take on that? I think the October 10th entry shows complaints that I think are related to a neck-related injury. I don't think a claimant is mandated to be able to self-diagnose themselves and say, hey, the symptomalities I have on my arm, things on my hand, I think come from two herniated discs in my neck that I don't even know I have yet. I think that's a pretty heavy burden for a petitioner to have. I think all she can do is she goes to the emergency room and says, hey, I've got problems, I hurt, what can I do? Takes her off work for three days. I think that's the October reference the court made here. Who's MacArthur? Is MacArthur a supervisor? Who's MacArthur in this case? Give me a minute. We have two nurses and I get them confused. Jen MacArthur, a registered nurse, was her immediate supervisor that night. And there was another lady, Tracy Craig, who was director of nursing. Okay, so MacArthur testified that the claimant never mentioned, never reported a work injury, never mentioned an accident involving a resident. So the employer's witnesses testified contrary, correct? They testified contrary, but in the case of Jen MacArthur, she testified contrary to her own written statement, which had been produced for the first time at the height of arbitration. So, yeah, she testified to it. It was impeached by her own statement because she said she didn't have any conversation at all. So, yes, she did say that. As far as the second person that testified for the respondent, Tracy Craig, when she was taken off work three days on her October 10th visit to the emergency room, Tracy said she didn't say she didn't report an injury. Tracy Craig specifically testified that she didn't tell me what kind of injury she had. And I think that's a bit much to expect an injured person to be able to diagnose themselves. Why couldn't they believe Dr. Soriano over Dr. Tornow? I think you have to look at the, first of all, there's no indication in the arbitrator's decision, or even really in the decision from the commission, pretty much the same, as to what their mental process was in determining. Well, it doesn't have to be in there. But there's evidence in here that Dr. Soriano opined that she had not suffered any acute injury. He examined her records, her x-rays, her MRI film. No acute injury to her neck or back, arms, shoulders. And it was all preexisting degenerative collapse of the disc in her cervical spine. Now, why couldn't the commission believe him? Well, I think there was some cross-examination that certainly diminished that opinion of Dr. Soriano. He admitted that lifting a patient could cause the herniation-type injuries. And he also stated that symptomologies from a herniated disc do not necessarily manifest themselves immediately. It may be, in his opinion, that's what he testified, four to six weeks after an injury before you might show some symptomology. I don't think Dr. Soriano's explanation through his deposition concerning whether or not there could have been an aggravation of a preexisting condition was particularly convincing. I think it was weak. That's my reading of it. Maybe not everybody's reading of it. Well, in fairness to you, we can go back and forth. I mean, there's conflicting medical evidence on the claimant's testimony versus the medical records. You've got Soriano testifying against the claimant. You've got Dornett testifying in favor of the claimant. So tell us succinctly why the decision of the commission's against the manifest weight of the evidence, knowing you have conflicting evidence. Well, I'm going to have to touch on my second issue, Judge. The reason that when I first got my client, I've known her for a long time, and I know she was challenged, let's put it mildly. So that's why I sent the original subpoenas for the accident reports, because I know I can't rely on her to be a good historian or anything else. Is this something to do with the manifest weight of the evidence? I thought that was a secondary issue or a separate issue. Well, she's not a particularly good historian. The reason I wanted that stuff was to show that she actually had a specific injury at a specific time. Not receiving it when I could have received it may have allowed me to get more evidence, would have been more specific of a specific injury at a specific time. I didn't get it two years later. It's the day of the hearing. All right, but you did review it prior to the hearing, even though you had limited time, correct? Pardon me? Did you review it prior to the hearing? They hand it to you like half an hour before you walk into court. I mean, you look at it. You've never seen it before. You say, well, wow, this is what I asked for. Over two years ago, if they didn't give me, they redacted it. But nevertheless, you then went to a hearing, right? Yeah, I went to the hearing, yes. So what are you going to do when your opponent gets up and says, probably you waived it? You got it? You still went to the hearing. What are we going to do about it now? Well, I think you have an ethical reason. I don't think you can, you know, you have things like spoliation when people intentionally mislead. I've been used in this context. No reason not to start now. I mean, people intentionally mislead you and ethically give you part of what you've subpoenaed and intentionally withhold what you really wanted and what was germane and what you may have been able to do something with from an evidentiary point of view right up to the date of the actual hearing, I think it's a significant issue. It compromises your case. It compromises the development of the case. The reason I had to take it that day is my client mentally, you know, she's not going to be able to choose a mask. And I knew that from day one, which is the reason I wanted any type of documentation to a pinpoint around the time the injury actually occurred. And by looking at both these statements even quickly, it's obvious she reported to the first nurse, my hands hurt, I have a problem, the nurse said don't worry about it, she got carpal. And then the testimony of Craig, the director of nursing, said, well, she was off for three days but she didn't tell me what type of accident she had or what type of injury she had. So I think a very quick look at it, I said these two things do pinpoint what I didn't have before and what I know I'm never going to get from my client because my client, I mean, I spent a lot of time talking to her. I think we get the impression, we get the picture. I think I've already argued both points already. We've got only so many dead horses we can have today. Thank you, guys. Okay, thank you, counsel. You have time in reply. Counsel, you may respond. Thank you, Your Honor. May it please the court and counsel, good to see everyone again today. And I promise you there's no jurisdiction at this time. Welcome back. Thank you. We won't surprise you with that this morning? No, Your Honor. Your name, please, for the record. Ilya Umeri on behalf of the respondent in this case. Your Honor, this case is a manifest weight issue. And I believe after reviewing all of the evidence in this case, I don't think there's an issue with manifest weight. First, the petitioner failed to report a work-related accident. The petitioner testified that she knew what the policy was for reporting a work-related accident. And she had filed a prior work comp claim, so she knew what the process was. And she failed to report or file an incident report with the company as far as work accident is concerned in this case. The petitioner's testimony alleges allegations are inconsistent with the practices that were presented in this case. Jan McArthur, as Your Honor pointed out, testified in this case that the petitioner asked her about what carpal tunnel is. And Jan explained to her what carpal tunnel was. And then specifically pointedly asked, why do you have it? Did you get injured on the job? To which the petitioner replied, no. Tracy Craig, the supervisor in this case, testified that the petitioner never filed a report of accident with the company. She testified that she suffered a work-related injury. Now what the petitioner has alleged is that the company knew that she had some kind of issues because she was given, the company was given an off work slip. As this court has found in White v. Industrial Commission, just because the company knows that the petitioner has something going on in her life in terms of medical does not mean that there was a work-related injury that occurred. The burden is on the petitioner to show that whatever injury she's suffering from is somehow related to her work. And she did not do that here. Same with Edith Crouch, who testified in this case, co-worker of the petitioner, worked with the petitioner on a daily basis, testified that she never saw the petitioner get injured at any point that they worked together. And she even contradicted the petitioner's testimony as far as where the petitioner alleged she was injured with the Alzheimer's patient. Price further failed to carry her burden of showing a work-related injury versus, again, some medical issue. The medical records do not support Price's allegation that she suffered a work-related accident. As Your Honor pointed out, the original application had a date of September 22, 2008. We have a medical record from that date showing she went and saw treatment for a finger injury. There's no mention of any shoulder, neck, or bilateral arm pain of any kind. And there's no mention of any work-related injury having occurred on that date. Unconvinced by that date of accident, they choose to apply a different date of accident at trial, which was October 10, 2008. Well, we presented medical evidence on that date as well. And the medical evidence from October 10, 2008 show that the petitioner was there complaining of some pain, but she alleged that it started a week ago, which would have been October 3, 2008. And, again, there's no mention that the issues she was having on October 10 or October 3 were in any way related to the work accident. All right. So the medical records, you can fairly say, are inconsistent with the claimant's claim. You've got the two doctors on opposite sides. You can argue it's not against the manifest way. We get that. What about his point that the employer unfairly and intentionally disclosed documents late that inhibited his ability to present a fair case? Your Honor, in order to answer that question, I would like to move Your Honors through a timeline. The petitioner sent a subpoena request for a petitioner's personal file and all other reports related to the injury sometime prior to November 30, 2009. On November 30, 2009, respondent's attorney sent a letter to the petitioner stating, could you please resend the subpoena to my attention for the records you are requesting? And once I have received that subpoena, I will provide you with the information that I believe you are entitled to under the law. Petitioner resend the subpoena on December 16, 2009, stating you must appear and testify before the Honorable Neal of the Court of Commission on February 29, 2010 at 9 a.m. and bring copies of all your materials. Respondent's attorney on February 9, 2010, after receiving petitioner's subpoena, filed a motion to quash the petitioner's subpoena. The motion to quash alleged, among other things, that the Illinois Workers' Compensation Law does not allow for discovery to occur in workers' compensation cases, that said subpoena is an attempt to perform discovery, and that there is no advanced discovery provision within the Illinois Workers' Compensation Act. The point of that motion to quash was because the petitioner's subpoena asked for documents before actual hearing. That was the point of the quash.  I did not try the case and I was not there, but according to our file notes, the case went before Arbitrary Neal. Arbitrary Neal denied the petitioner's subpoena based on no discovery. After which, the petitioner then sent a signed release with requests asking for additional medical records. Now, it appears some additional medical records were sent, or some additional records were sent to the petitioner, but not all of them. But it was not based on that subpoena. Now, as your honors are well aware, as far as discovery is concerned in workers' compensation, we comply with it. We comply with it because we produced all documents prior to trial, prior to the hearing. The petitioner had the document that he alleges we withheld prior to the hearing. He had an opportunity to review that document prior to the hearing. He did review that document prior to the hearing. In fact, he used that document to try to impeach our own witness at the hearing. And the petitioner did object to that document prior to the hearing taking place. However, during the hearing, he used it, and Arbitrary McCarthy asked him whether or not he was going to withdraw his objection to that piece of evidence because he used it. And I believe his quote was, your honor, I believe I have to because I can't have my cake and eat it too. I think that's where we are here, your honor. He waived that objection to that piece of evidence. Therefore, he cannot bring it before this court. He cannot bring it before the appellate court. So that is a non-issue, I believe. And as far as scorrelation is concerned, there's no destruction of evidence. Scorrelation does not apply at all. And for these reasons, your honor, we would ask that you affirm the commission finding that there was no access to this case. Thank you. Thank you, counsel. Counsel may reply. I'm going to be brief. As far as filling out the accident report, and they make much of this, it's not up to my client to fill out the accident report. If the nurse to whom she reports doesn't think it's sufficient or necessary, there's not much she can do. She doesn't have the forms. The reason I subpoenaed the accident report is I've seen these people before. And they always filled out incident reports. They have a standard form they use, and I've seen them many times. And what do I get this time two years later? I get a handwritten note on lined paper and not on any form of any kind. Does that make me suspicious? Of course it makes me suspicious. So I think sitting here and saying, hey, she didn't fill out a report, I would almost presuppose she was in charge of forms, which, of course, she's not. And the only other thing I'll say is that by giving you misleading compliance to a subpoena, and I was told by counsel, this is all we have, means you think that's all there's there until the day of the hearing. So it does, I think, impact what you could have done years previously, which you could not possibly have done an hour before the hearing itself. And that is all I have. Thank you. Thank you, counsel, both for your arguments in this matter. We take them under advisement and a written disposition shall issue.